UNITED STATES DISTRICT COURT
IN THE NORTHERN DISTRICT OF OHIO

DEON MCQUEEN,

    Plaintiff,                          CASE NO:

v.

UNITED STATES DRUG
ENFORCEMENT ADMINISTRATION,
SHAUN MOSES, in his individual capacity,
JAMES DELUCA, in his individual capacity,
QUINN AUTEN,  in his individual capacity, and
JOHN CIPRIANI, in his individual capacity.

    Defendants.

## COMPLAINT

Deon McQueen, by and through his attorneys, Walton + Brown LLP and

Carla D. Aikens, P.L.C., submits the following Complaint against DEFENDANT

United States Drug Enforcement Administration (hereinafter referred to as "DEA"

or "Defendant").

## JURY DEMAND

COMES NOW PLAINTIFF, Deon McQueen, and hereby makes his demand

for trial by jury, for all counts so entitled.

## JURISDICTION

1

1. For the majority of the events giving rise to this Complaint, Plaintiff Deon McQueen was a resident of Trumbull County, Ohio.

2. Defendant, United States Drug Enforcement Administration, is a U.S. agency with an office located in Youngstown, Ohio, at which Plaintiff was employed.

3. Defendant SHAUN MOSES ("Moses") is, upon information and belief, employed by the DEA as Acting Resident Agent in Charge of the Youngstown Resident Office. He is sued in his individual capacity.

4. Defendant JAMES DELUCA ("Deluca") is, upon information and belief, employed by the DEA as a Special Agent. He is sued in his individual capacity.

5. Defendant QUINN AUTEN ("Auten") is, upon information and belief, employed by the DEA as Acting Assistant Special Agent in Charge. He is sued in his individual capacity.

6. Defendant JOHN CIPRIANI ("Cipriani") is, upon information and belief, employed by the DEA as Division Counsel. He is sued in his individual capacity.

7. All relevant actions giving rise to this complaint took place in Mahoning County in the state of Ohio.

8.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1331.

9.  Venue of this Court is pursuant to 28 U.S.C. § 1391(b), the judicial district in which a substantial part of the events giving rise to this claim occurred.

10. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## FACTUAL ALLEGATIONS

11. Plaintiff reincorporates and restates the preceding paragraphs as if fully set forth herein.

12. Plaintiff, Deon McQueen, is a Black man.

13. Plaintiff McQueen has been continuously employed in the federal civilian workforce since 2009, when he began working with the Bureau of Prisons. On January 17, 2021, he began his employment with the Drug Enforcement Administration ("DEA").

14. Despite his 12-plus years of experience in substantially similar positions, the DEA placed him on probation for the first two years of his employment.

15. Shortly after starting at the DEA, Mr. McQueen notified his superiors that his wife had a medical condition requiring access to specialized treatment. He informed them of his intent to eventually transfer to the Detroit Division Office to ensure his family's medical needs were met.

3

16. Because Mr. McQueen's initial assignment was to the Youngstown Resident Office, his family remained in Ypsilanti, Michigan, near the University of Michigan Medical Center for medical care.

17. In June 2021, Mr. McQueen learned that his daughter had a mental health condition requiring additional treatment and intensive monitoring. Despite his family's medical needs, Mr. McQueen remained committed to the DEA's mission, traveling weekly between Youngstown and Ypsilanti while awaiting a transfer to Detroit.

18. During his time in Youngstown, Mr. McQueen maintained open lines of communication with his supervisors to ensure that his family obligations would not interfere with DEA operations.

19. For example, when a wire operation was planned, Mr. McQueen proactively contacted Acting Resident Agent in Charge Shaun Moses to ensure that his weekly trips would not affect his availability. Mr. McQueen's Field Training Agent, Special Agent James Deluca, assured him that his schedule would not pose an issue, as he typically had five-day workweeks with two consecutive days off.

20. Throughout the wire operation, Mr. McQueen fully reported for duty, including working additional weekend shifts requested by the agency despite his family obligations.

4

21. The wire operation was completed successfully without any issues related to Mr. McQueen's family obligations.

22. Mr. McQueen's dedication to the agency's mission during the wire operation was representative of his overall work performance. As a new employee, he sought guidance from experienced agents, learned from any mistakes, and gave generously of his time and effort to ensure the agency's success.

23. Despite his professionalism and dedication, certain employees took issue with Mr. McQueen, the only Black agent in the office, because he spoke out against a hostile work environment.

24. Many of his coworkers regularly engaged in discussions that reflected bias and hostility toward disenfranchised minorities, rather than focusing on their job responsibilities.

25. For example, shortly after the conviction of a police officer for the murder of George Floyd, Mr. Moses interrupted a training session to deliver a lecture condemning the verdict and describing the officer's conviction as "garbage."

26. Other agents frequently engaged in discussions about conspiracy theories concerning transgender people, their bathroom preferences, and anti-vaccine rhetoric. These conversations often devolved into complaints about seeing President Biden's portrait in the office and speculation about his assassination.

27. Because these discussions were so pervasive, Mr. McQueen altered his schedule to work earlier shifts, allowing him to avoid the hostile environment that developed in the afternoons.

28. Concerned about the impact of these conversations on agency time, morale, and reputation, Mr. McQueen reported his concerns to Mr. Moses.

29. Rather than addressing the misconduct, Mr. Moses dismissed Mr. McQueen's concerns outright, stating that such conversations were common at every DEA office and accusing Mr. McQueen of trying to "change the culture" of the office.

30. Mr. Moses, as a supervisor, had a responsibility to prevent workplace harassment and a hostile environment, yet he took no corrective action.

31. Mr. Moses's inaction emboldened Mr. McQueen's coworkers, who escalated their misconduct, now using offensive slurs directed at people with disabilities, LGBTQ+ individuals, and African Americans, including using the N-word in Mr. McQueen's presence.

32. On September 21, 2021, Mr. McQueen formally reported the misconduct to Mr. Moses and Acting Assistant Special Agent in Charge Quinn Auten.

33. Due to fear of retaliation, Mr. McQueen was reluctant to name specific individuals responsible for the discriminatory conduct. Instead of taking meaningful action, Mr. Moses used Mr. McQueen's reluctance as an excuse

to permit the misconduct to continue, falsely claiming that he could not intervene without identifying the perpetrators.

34. Following his complaint, Mr. Moses and Mr. Deluca collaborated to fabricate grounds for Mr. McQueen's termination. Just days after Mr. McQueen reported the discrimination, Mr. Deluca suddenly issued a negative performance review that Mr. Moses could use as pretext for termination.

35. Prior to his September 21 report, Mr. McQueen had consistently received high performance ratings, including a perfect review on August 28 and an even stronger review on September 21, with no unacceptable performance areas.

36. However, immediately after his complaint, his September 25 review drastically changed, rating him "unacceptable" in six areas, including "understanding standards of conduct," "teamwork," and his "attitude" about the office environment—all vague and subjective categories.

37. Despite the clear retaliation, Mr. McQueen accepted the review and committed to further improving his performance.

38. However, management continued to harass him, prompting him to request a meeting to discuss the ongoing retaliation.

39. On October 7, 2021, management convened a meeting attended by Mr. Moses, Mr. Quinn, Resident Agent in Charge James Goodwin, Division Counsel John Cipriani, and Employee Advocate Tamara Wasson.

40. Instead of addressing Mr. McQueen's concerns, Mr. Cipriani attempted to impose new policies on Mr. McQueen alone, restricting his ability to travel home to care for his wife and daughter—rules not applied to white agents.

41. Management proposed requiring Mr. McQueen to report his whereabouts at all times, a policy not applied to white agents who routinely traveled for vacations and family events.

42. Mr. Moses became visibly angry when Mr. McQueen questioned the discriminatory nature of these new policies. Following the meeting, Mr. Moses refused to speak to Mr. McQueen, claiming he "didn't feel comfortable" being alone with him and requiring a witness for all future interactions.

43. On October 13, 2021, Mr. McQueen escalated his complaint to Mr. Auten, who dismissed his concerns and made a sarcastic remark that Mr. Moses "doesn't have to curtsy" when speaking to agents.

44. On October 18, 2021, frustrated by the continued retaliation and lack of response, Mr. McQueen filed a formal EEO complaint.

45. On October 26, 2021, instead of addressing Mr. McQueen's concerns, DEA terminated him under false pretexts fabricated by Mr. Moses and Mr. Deluca.

46. After delivering the termination letter, Mr. Auten confiscated Mr. McQueen's agency-issued equipment and had him escorted from the premises.

47. On November 3, 2021, DEA second-line supervisors referred Plaintiff to the Office of Professional Responsibility, accusing him of lying and creating a hostile work environment.

48. DEA management claimed that the protected disclosures made on October 7, 2021 constituted insubordination.

49. Plaintiff filed a complaint with the EEO, which issued him a right to sue letter within 90 days of the filing of this Complaint.

50. Plaintiff requests relief as stated herein.

## <u>COUNT I</u>

## <u>RACIAL DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1983<br>(ENFORCING RIGHTS UNDER 42 U.S.C. § 1981)</u>

**(Against Defendants Moses, Deluca, Auten, and Cipriani<br>in their individual capacities)**

51. Plaintiff incorporates by reference all preceding paragraphs.

52. This Count is brought pursuant to 42 U.S.C. § 1983, which provides a cause of action against very person who, under color of law, subjects any citizen to the deprivation of any rights, privileges, or immunities secured by the U.S. Constitution and laws.

53. At all relevant times, Defendants Moses, Deluca, Auten, and Cipriani were employees of the DEA, acting in the course and scope of their employment and under color of law.

54. Section 1981, as enforced through § 1983, guarantees Plaintiff the right to make and enforce contracts free from racial discrimination.

55. Plaintiff is a member of a protected class (African-American) and was qualified for his position.

56. Defendants, acting under color of law, deprived Plaintiff of his § 1981 rights by engaging in intentional racial discrimination, including subjecting him to a racially hostile work environment, issuing discriminatory performance evaluations, fabricating pretextual discipline, and terminating his employment.

57. White comparators were not subjected to such treatment.

58. Defendants' conduct constitutes the deprivation of rights, privileges, and immunities secured by the Constitution and laws of the United States, in violation of § 1983.

59. As a direct and proximate result, Plaintiff suffered economic losses, emotional distress, humiliation, and damage to his career.

60. Plaintiff requests relief as set forth in the Prayer for Relief.

61. In the alternative, to the extent § 1983 is deemed inapplicable to federal officials, Plaintiff brings these individual-capacity claims directly under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), for violation of his constitutional and statutory rights.

## COUNT II

## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-3(a)

62. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

63. At all material times, Plaintiff was an employee, and Defendant was an employer covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

64. Title VII prohibits employers from retaliating against employees who engage in protected activity, including opposing racial discrimination, reporting workplace harassment, or participating in an investigation into such discrimination.

65. Plaintiff engaged in protected activity under Title VII by opposing racial discrimination and a hostile work environment in the workplace. Specifically, Plaintiff reported racially hostile comments, racial slurs, and discriminatory treatment to his supervisors, including Mr. Moses and Mr. Auten.

66. Defendant, through its supervisors and agents, had knowledge that Plaintiff engaged in protected activity, as Plaintiff made formal and informal complaints regarding racial harassment and discrimination.

67. After Plaintiff engaged in protected activity, Defendant subjected him to adverse employment actions, including but not limited to:

a. Issuing unjustified negative performance reviews after previously rating Plaintiff's work as satisfactory or exceptional;

b. Fabricating pretextual reasons to discipline and ultimately terminate Plaintiff;

c. Subjecting Plaintiff to heightened scrutiny and disparate treatment compared to his white colleagues;

d. Restricting Plaintiff's ability to travel home, despite allowing white agents to do so without similar limitations; and

e. Terminating Plaintiff in retaliation for making complaints about racial discrimination.

68. Defendant's retaliatory actions were intentional, willful, and taken in deliberate disregard of Plaintiff's protected rights under Title VII.

69. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered economic losses, including loss of wages and benefits, emotional distress, mental anguish, humiliation, and damage to his career and reputation.

70. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT III

## RETALIATION IN VIOLATION OF OHIO REV. CODE § 4112.02(I)

### (Against Defendants Moses, Deluca, Auten, and Cipriani in their individual capacities)

71. Plaintiff incorporates by reference all preceding paragraphs.

72. Plaintiff engaged in protected activity by reporting racial discrimination and hostile work environment conditions.

73. Defendants Moses, Deluca, Auten, and Cipriani had knowledge of Plaintiff's protected activity.

74. Defendants, acting as Plaintiff's supervisors and coworkers, retaliated against Plaintiff by fabricating negative reviews, imposing restrictions not applied to white agents, escalating hostility, and terminating his employment.

75. These actions violated Ohio Rev. Code § 4112.02(I), which makes it

unlawful to retaliate against an employee who opposes discrimination.

76. As a direct and proximate result, Plaintiff suffered economic losses,

humiliation, emotional distress, and damage to his career.

77. Plaintiff requests relief as set forth in the Prayer for Relief.

## COUNT IV

## RETALIATION IN VIOLATION OF 42 U.S.C. § 1983
**(Against Defendants Moses, Deluca, Auten, and Cipriani in their individual capacities)**

78. Plaintiff incorporates by reference all preceding paragraphs.

79. Plaintiff incorporates by reference all preceding paragraphs.

80. This Count is brought under 42 U.S.C. § 1983 to redress violations of rights

secured by § 1981 and the Constitution.

81. At all relevant times, Defendants Moses, Deluca, Auten, and Cipriani were

acting under color of law as DEA officials.

82. Section 1981, as enforced through § 1983, prohibits retaliation against

individuals who oppose racial discrimination.

83. Plaintiff engaged in protected activity by complaining about and opposing

racially discriminatory conduct and hostile work environment conditions.

84. Defendants, acting under color of law, knew of Plaintiff's protected activity

and retaliated against him by fabricating negative performance reviews,

imposing restrictions not applied to white agents, escalating hostility, and ultimately terminating him.

85. The temporal proximity between Plaintiff's complaints and the adverse actions demonstrates a causal connection.

86. Defendants' conduct deprived Plaintiff of rights, privileges, and immunities secured by the Constitution and laws of the United States, in violation of § 1983.

87. As a direct and proximate result, Plaintiff suffered lost wages and benefits, reputational harm, emotional distress, and humiliation.

88. Plaintiff requests relief as set forth in the Prayer for Relief.

89. In the alternative, to the extent § 1983 is deemed inapplicable to federal officials, Plaintiff brings these individual-capacity claims directly under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), for violation of his constitutional and statutory rights.

## COUNT V

## RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, et seq.

90. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

91. At all material times, Plaintiff was an employee, and Defendant was an employer covered by and within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq.

92. Title VII makes it unlawful for an employer to discriminate against an employee on the basis of race in hiring, promotions, compensation, discipline, termination, and other terms, conditions, and privileges of employment.

93. Plaintiff is a Black man and, as such, is a member of a protected class under Title VII.

94. Plaintiff was subjected to discriminatory treatment by Defendant, including offensive conduct, disparate discipline, and termination, based on his race.

95. Defendant's discriminatory actions were intentional, willful, malicious, and/or taken with reckless disregard for Plaintiff's rights under Title VII.

96. The unlawful conduct substantially interfered with Plaintiff's employment and created an intimidating, hostile, and offensive work environment, as detailed in the factual allegations.

97. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered loss of earnings, loss of earning capacity, loss of fringe benefits, emotional distress, humiliation, and damage to his professional reputation.

98. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VI
## RACE DISCRIMINATION IN VIOLATION OF OHIO REV. CODE § 4112.02(A)
### (Against Defendants Moses, Deluca, Auten, and Cipriani
### in their individual capacities)

99. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

100. Plaintiff incorporates by reference all preceding paragraphs.

101. Plaintiff is a Black man, and thus a member of a protected class.

102. Plaintiff was qualified for his position, as demonstrated by his prior experience and positive performance reviews.

103. Defendants Moses, Deluca, Auten, and Cipriani subjected Plaintiff to disparate treatment, hostile work environment, and termination on the basis of race.

104. Similarly situated white agents were not subjected to such treatment.

105. Defendants' conduct violated Ohio Rev. Code § 4112.02(A), which prohibits discrimination in the terms, conditions, and privileges of employment.

106. As a direct and proximate result, Plaintiff suffered lost wages, loss of benefits, emotional distress, and humiliation.

107. Plaintiff requests relief as set forth in the Prayer for Relief.

## COUNT VII

## HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, et seq.

108.     Plaintiff incorporates by reference all allegations in the preceding

paragraphs.

109.     At all material times, Plaintiff was an employee, and Defendant was

an employer covered by and within the meaning of Title VII, 42 U.S.C. §

2000e, et seq.

110.     A hostile work environment under Title VII exists when an employee

is subjected to severe or pervasive racial harassment that alters the

conditions of employment and creates an abusive workplace.

111.     Throughout his employment, Plaintiff was subjected to racially

charged conversations, offensive slurs, and hostile behavior, as detailed in

the factual allegations.

112.     Defendant's supervisors and agents failed to take prompt remedial

action and, instead, condoned and participated in the hostile conduct.

113.     Plaintiff's work environment became so hostile that he was forced to

adjust his schedule to avoid his co-workers and was subjected to retaliation

for reporting the misconduct.

114.     Despite Plaintiff's complaints about racial hostility, Defendant failed to investigate, failed to discipline the responsible individuals, and permitted the discrimination to continue.

115.     As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered loss of compensation, loss of career opportunities, emotional distress, and humiliation.

116.     As a result of Defendant's unlawful conduct, Plaintiff has suffered damages in an amount to be proven at trial.

117.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VIII

### HOSTILE WORK ENVIRONMENT IN VIOLATION OF OHIO REV. CODE § 4112.02(A)
**(Against Defendants Moses, Deluca, Auten, and Cipriani
in their individual capacities)**

118.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

119.     Plaintiff was subjected to severe and pervasive racially hostile conduct, including slurs, biased commentary, fabricated discipline, and differential treatment.

120.     Defendants Moses, Deluca, Auten, and Cipriani directly participated in, condoned, or failed to remedy this conduct.

121.     The hostility was because of Plaintiff's race, and was sufficiently

severe and pervasive to alter the terms and conditions of employment.

122.     Defendants' conduct violated Ohio Rev. Code § 4112.02(A).

123.     As a direct and proximate result, Plaintiff suffered lost wages,

emotional distress, humiliation, and reputational harm.

124.     Plaintiff requests relief as set forth in the Prayer for Relief.

## **RELIEF REQUESTED**

PLAINTIFF, DEON MCQUEEN, respectfully requests that this Honorable

Court enter judgment against all Defendants, jointly and severally where applicable,

as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;
2. Exemplary damages in whatever amount which Plaintiff is entitled;
3. An award of lost wages and the value of fringe benefits, past and future;
4. An award of interest, costs, and reasonable attorney fees; and
5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated: November 20, 2025          Respectfully Submitted,

WALTON + BROWN, LLP

By: /s/ Sean L. Walton
Sean L. Walton
88 E. Broad Street, Suite 1560
Columbus, Ohio 43215
(614) 636-3476

CARLA D. AIKENS, P.L.C.

/s/ Carla D. Aikens
Carla D. Aikens (P69530)
615 Griswold St., Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com

*Attorneys for Plaintiff*